UTICA,
October, 1822.

MARVIN
v.
M'CULLUM.

---

MARVIN *against* M'CULLUM, and another.

A promissory note has no legal inception, until it is delivered to some person, as evidence of a subsisting debt.

A note made payable to A., or bearer, but never delivered to A.; but passed by the maker to H., as a security for an usurious loan, is *usurious* and illegal in its inception.

ASSUMPSIT on a promissory note, dated *October* 13, 1820, made by the defendants, *M'Cullum* and *Merriam*, for 200 dollars, payable on the first of *January*, 1821, to *James Averill*, or bearer, with interest. Plea, *non assumpsit.* The cause was tried before Mr. Justice *Woodworth*, at the *Otsego* circuit, in *September*, 1821. The plaintiff proved the making of the note. The defendant called *James Averill*, the payee of the note, as a witness, who testified that he never owned the note, that it was never delivered to him, nor in his possession, and that he never transferred it to any person ; but he said, that before the date of the note, he had agreed with the defendants that they should make the note, and he was to give them 100 dollars in cash, and 100 dollars in leather ; but the note was never brought to him. *John A. Hudson*, another witness for the defendants, testified, that he bought the note of *Merriam* before it became due, for the full amount, and paid for it, part in money, and part in other property. The defendants then offered to prove, that *Hudson*, when he purchased the note, was apprized, that it was made to raise money for the benefit of *Merriam*, and that *M'Cullum* signed the note, without any consideration, merely to give it credit ; and that *Hudson* bought the note at a discount from the sum due thereon, at the time of the purchase ; but this evidence, which was offered to prove the note usurious, was rejected by the Judge. *Hudson* then testified, that the note was sold and transferred by him to the plaintiff, before it became due, for its full value.

The Judge charged the jury, that " inasmuch as it appeared, that the plaintiff had bought the note and paid the full amount of it, before it became due ; and as it did not appear, that he had any notice or knowledge of the purpose for which the note had been made ; and it not appearing that the note was usurious in its inception, but was given for the purpose of being passed to *Averill*, for its full value, the plaintiff was entitled to recover :" And the jury, under the direction of the Judge, found a verdict for the plaintiff, with leave to the plaintiff to move the court to set aside the verdict, and for a new trial, on a case containing the facts above stated.

*Starkweather*, for the defendants.

*Van Vechten* and *Baldwin*, for the plaintiff.

PLATT, J. delivered the opinion of the Court.

With deference, it seems to me, the Judge was mistaken in excluding the evidence offered by the defendants. The reason for rejecting that evidence, may be collected from the charge to the jury, to wit : That " *the note was not usurious in its inception, but was given for the purpose of being passed to Averill, for its full value.*"

The mistake, I apprehend, consisted in the misapplication of the terms " *purchase*" of the note ; and the " *inception*" of the note. By its *inception*, I understand, *when it was first given ;* or *when it first became the evidence of an existing contract.* It has no *legal inception* until it is *delivered* to some person, as evidence of a *subsisting debt.* Merely writing and signing a note, and retaining it in the hands of the drawer, forms no contract. No person had then a right of action on it, any more than if it had been blank paper. This note was drawn payable to *Averill* or *bearer ;* but it never was delivered to him, nor had he ever any interest in it. As to him, therefore, it had no inception. His name was used like that of a *fictitious payee* in bank notes : And it had no effect whatever, in regard to the question now before us. When was the inception of this note ? In my judgment, it had its inception, when it was delivered by the makers, or either of them, to *Hudson*, as evidence of a contract. Until then,

no contract existed in regard to the note. And if, as the defendants offered to prove, the agreement between *Hudson* and the makers was *usurious*, and the note was first given to *H.* as security for an usurious loan; then it follows, that it was corrupt and illegal in its inception. The counsel for the defendants called it *purchasing* the note by *Hudson* ; which was incorrect phraseology, and was calculated to mislead. He did not buy the note as evidence of a previously existing debt, which is the correct sense of the term : On the contrary, he lent money, and took this note from the makers, who then issued it, for the first time. As well might it be said, that a man buys a note, who sells a horse, and takes the note of the purchaser for the price. (*Munn* v. *Commission Company*, 15 *Johns. Rep.* 55. *Powell* v. *Waters*, 17 *Johns. Rep.* 176.) We are, therefore, of opinion, that a new trial ought to be granted.

New trial granted.