WILLIAM WHIPPLE BROWN *v.* DANIEL FOSTER & others.

In debt on a prison limits bond, where the declaration sets out a breach of the bond by the escape of the prisoner, a plea of the discharge of the prisoner from jail under the poor debtors' act, containing new matter by way of confession and avoidance of the going of the prisoner beyond the limits, should not conclude, with a special traverse of the escape, to the country, but with a verification; and a replication to such plea, averring that no citation to the creditor was issued by the justices who granted the discharge, or was served upon the creditor, is not liable to objection, because the plaintiff did not join in the issue tendered by the special traverse, but attacked the validity of the discharge under which the prisoner justifies.

A certificate given by the justices to a poor debtor in the form prescribed by the statute is not conclusive, but *prima facie* evidence merely, that a citation was issued by the justices to, or was duly served upon, the creditor, notwithstanding the statute requires the justices "to examine the return of said citation, and if it shall appear to have been duly served," to administer the oath, &c., and notwithstanding the certificate states that the debtor "had caused the creditor at whose suit he was committed to be duly noti-

fied according to law; " and hence, in debt upon a prison limits bond, it is a good reply to a plea setting up a discharge under the poor debtor's act, that no citation was issued to, or was served upon, the committing creditor.

A plea, concluding to the country where it should conclude with a verification, is defective in form merely; and such a defect, under the statute of amendments in Rhode Island, will not warrant a judgment upon demurrer against the defendants, but the court will order the conclusion to be amended.

In pleading a discharge of a prisoner under the poor debtor's act, it is necessary to aver, that a complaint was made by the debtor to the justice, that he had no property, &c., wherewith to support himself in prison and to pay prison charges, and asking to be admitted to take the poor debtor's oath, such complaint being necessary to give the justice jurisdiction of the subject-matter; after which, the certificate of discharge may be set out with a *taliter processum est,* and it is not necessary specially to aver the issue and service of citation to the creditor, or other proceedings necessary to be had in order to the granting of the certificate.

DEBT upon a jail bond, in the penal sum of $3000, given by Daniel Foster, as principal, and by the other defendants, as his sureties, for the liberty to said Foster of the jail limits in the county of Bristol, the declaration in which set forth, as a breach of the condition of the bond, that the said Foster " did not, from the giving of said writing obligatory, and thenceforth, continue and be a true prisoner, in the custody, guard, and safe-keeping of Mary L. B. Pearce, keeper of said prison, and in the custody, guard, and safe-keeping of Stephen Johnson, his deputies, officers, and servants, or either or any of them, within the limits of said prison, until he was lawfully discharged therefrom, without committing any manner of escape or escapes during the term of his restraint, but, on the contrary thereof, that said Foster did, during the term of such his restraint, escape and go off and beyond the limits of said prison, without being lawfully discharged from such his commitment."

The second plea filed to the declaration alleged, in substance, " that after said Foster's commitment to the jail in Bristol County at the suit of the plaintiff, and before the escape in the declaration pretended, to wit, on the third day of August, 1858, at Bristol, two justices of the peace in said county of Bristol, to wit, Bennett J. Munroe and Massadore T. Bennett, delivered to the said Daniel Foster, then a prisoner in said jail committed on mesne process for debt at the suit of the plaintiff, and to whom the oath for the relief of poor debtors had then and there been administered according to the

provisions of the statutes in such case made and provided, a certificate thereof, under their hands and seals, in the words and figures following, viz. : —

    ' Bristol, *sc.*    To Mary L. B. Pearce, keeper of the jail at Bristol, in the county of Bristol, and state of Rhode Island, &c.

    ' We, the subscribers, authorized by the statute in such case made and provided, do certify, that Daniel Foster, of Warren, in said county, a poor prisoner confined upon mesne process in the prison at Bristol aforesaid, hath caused William Whipple Brown, of Providence, in the county of Providence and state of Rhode Island, &c., the party at whose suit he was confined, to be notified according to law of his, said Daniel Foster's, desire of taking the benefit of an act entitled " An act for the relief of poor persons imprisoned for debt ; " that in our opinions the said Daniel S. Foster has not any estate, either real or personal, except what is exempted from attachment by law, sufficient to support himself in prison, and that he hath not conveyed or concealed his estate with desire to secure the same to his own use, or to defraud his creditors, and that we have, after due caution to said Daniel Foster, administered to him the oath prescribed in the act aforesaid.

    ' Witness our hands and seals, this third day of August, A. D. 1858.

               (Signed)        ' BENNETT J. MUNROE, [L. S.]
                              ' Justice of the peace.
                        ' M. T. BENNETT,     [L. S.]
                              ' Justice of the peace ; '

that the said Daniel Foster, thereafterwards, to wit, on the same day, presented said certificate to the said Mary L. B. Pearce, keeper of said jail, and the said keeper forthwith discharged said Foster from his said commitment at the suit of the plaintiff; and the said Foster, thereafterwards, to wit, on the 4th day of August, A. D. 1858, did go off and beyond the limits of said prison, which going off and beyond said limits is the same escape and going off and beyond the limits aforesaid complained of in the plaintiff's declaration ; without this, that the said Foster did escape and go off beyond said limits in

manner and form as in said declaration is alleged; and of this they put themselves on the country," &c.

The third plea, filed by the defendants to the declaration, was, in substance, " that after the said commitment of the said Foster in manner as aforesaid, and on the same day, to wit, on the 27th day of July, A. D. 1858, to wit, at said Bristol, the said Foster, who was then imprisoned for debt on mesne process at the suit of said plaintiff, did complain to one Bennett J. Monroe, a justice of the peace in said Bristol, that he had no estate, real or personal, wherewith to support himself in jail or to pay jail charges, and did, then and there, request to be admitted to take the poor debtor's oath; and the said Bennett J. Monroe did then and there issue a citation to said plaintiff, he being within this state, to appear at said Bristol, at the jail therein, on the third day of August, A. D. 1858, being the time and place by said justice appointed, to show cause, if any he had, why the said Foster complaining as aforesaid should not be admitted to take the poor debtor's oath; and the said plaintiff then and there waived the service of the citation upon him according to the formalities required by the provisions of the Revised Statutes, ch. 198, § 3, and then paid to one ———— Pearce, to whom said citation had been intrusted by the justice aforesaid, and who then and there had the same in his possession, the sum of two dollars for the past and future board of said Foster until said third day of August, A. D. 1858, and the said Pearce, thereafterwards, on the same day, paid over said sum of money to the keeper of said jail; and thereafterwards, on the return day of said citation, to wit, on the third day of August, A. D. 1858, to wit, at said Bristol, at the jail therein, at nine o'clock in the evening of the same day, Bennett J. Munroe and Massadore T. Bennett, two justices of the peace of the county of Bristol, where said Foster was committed, did examine the return of said citation, and it appearing to them to have been duly served did administer to said Foster the oath provided in the Revised Statutes, ch. 198, § 11, for the relief of poor debtors ;— the said justices, after a full examination of said Foster under oath, and hearing the parties, thinking it proper so to do; and the said Foster having then and

there first made an assignment of all his estate of every kind, and wherever the same might be, except what was exempted from attachment by law, to the said keeper of said jail and her successors in said office, and her heirs and assigns, in trust, for the benefit of all his creditors in proportion to their respective demands; and the said justices, then and there, after the oath had been administered as aforesaid, did deliver to said Foster a certificate thereof, under their hands and seals, in the words and figures following, viz.: as in the second plea; and the said Foster, thereafterwards, to wit, on the same day, at said Bristol, did present said certificate to said keeper of said jail, and the said keeper did forthwith discharge said Foster from his said commitment at the suit of the said plaintiff, as appears from the discharge on said jail book, a true copy whereof is annexed to, and made part of, this plea; and the said Foster did, thereafterwards, to wit, on the fourth day of August, a. d. 1858, go off and beyond the limits as aforesaid, which going off and beyond the limits of said jail is the same escape and going off and beyond said limits in said plaintiff's declaration complained of; without this, that said Foster did escape and go off and beyond the limits of said jail in manner and form as the plaintiff hath above thereof complained; and of this," &c.

The fourth plea was the same as the third, except that it stated that the citation to the creditor, issued by the justice, " was, then and there, to wit, on said twenty-seventh day of July, a. d. 1858, duly served on the plaintiff," and that it stated, that the examination of the poor debtor took place, at *six* o'clock in the evening of the third day of August, 1858, instead of nine o'clock in the evening of that day, as stated in the third plea.

To these pleas, the plaintiff replied, in substance, " that there was no citation issued to the plaintiff to appear and show cause why the said defendant, Daniel Foster, should not be permitted to take the oath in said second, third, and fourth pleas mentioned, in manner and form as the defendants have above thereof in said second, third, and fourth pleas alleged; and this the plaintiff prays may be inquired of by the country," &c.

He further replied, to the second and fourth pleas, " that the said citation in those pleas mentioned was not served upon the plaintiff in manner and form as the defendants have above thereof in said second and fourth pleas alleged; and this the plaintiff prays may be inquired of by the country," &c.

To these replications the defendants demurred; assigning for causes of demurrer, that the plaintiff, by his said replications hath not taken issue upon said pleas of the said defendants and upon the denial therein contained, that is to say, that the said Foster did not go off and beyond said limits in manner and form as in said declaration is alleged, but has stated and put in issue in said replications, that said citation to said plaintiff was not issued, and was not served upon the plaintiff in manner and form as in said pleas is alleged; whereas, every matter and thing in said pleas stated, as to said citation and the service thereof upon the plaintiff, was stated as inducement; and also, for that said replications are, in other respects, uncertain, informal, and insufficient.

The plaintiff joined in demurrer.

*Brownell*, with whom was *Blake*, for the defendants.

The 1st replication to the 2d, 3d, and 4th pleas of the defendant alleges, that there was no citation issued to the plaintiff to appear and show cause why the said Foster should not be permitted to appear and take the oath, &c.   The 2d, 3d, and 4th pleas set forth the certificate of the justices, and facts sufficient to show their jurisdiction in the premises, and allege the discharge of Foster by the jailer, on the authority of the certificate, and by virtue of the statute, and his subsequent going beyond the limits.   All the above facts are set forth by way of inducement, and the pleas deny specially the breach of the condition of the bond set up in the declaration, to wit, that the defendant did go off of and beyond the limits in manner and form as therein charged.

1.- The 1st replication to these pleas, therefore, instead of joining issue, traverses one of the allegations in the inducement of the pleas; thus making a traverse upon a traverse.   The facts set forth in the inducement are only an *indirect* denial of the alleged breach set out in the declaration, while the denial, under

48 *

the *absque hoc*, is a *direct* and sufficient denial of the alleged breach. When the denial under the *absque hoc* is sufficient in law, the inducement cannot be traversed. Stephen on Pl. p. 188.

2. The 2d, 3d, and 4th pleas show a legal discharge, under the provisions of the Revised Statutes for the relief of poor debtors. The 1st replication to these pleas seeks to avoid the legality of this discharge, by alleging, that no citation was issued to the plaintiff as committing creditor to appear and show cause why Foster should not be permitted to take the oath. The plaintiff cannot deny in this suit the fact that a citation was issued, in conformity with the provisions of the Revised Statutes, ch. 198, §§ 2, 3. The statute provides for the issuing of a citation to the committing creditor, as a means of notification to him of the pendency of the application. It was the duty of the justices who heard the application of Foster, to examine the citation and return thereon, and see if it had been duly served upon the committing creditor, and to pass upon this question, before proceeding to the examination of the applicant. Rev. Stats. ch. 198, § 10. The determination of this question was a matter submitted to their judgment by the statute. A power to hear and determine is jurisdiction. *Angell* v. *Robbins*, 4 R. I. (1 Ames) 493, and cases cited. If the citation appeared to them " to have been duly served," they were authorized to proceed with the hearing. Rev. Stats. ch. 198, § 10. The *fact* to be determined in this case was, whether or not the committing creditor had been duly notified to appear and show cause why the relief asked for by Foster should not be granted. If, in fact, there was a citation in the hands of the justices at the time of the hearing, and notice had been given to the creditor in any form, either by a strict compliance with the statute, or informally, in consequence of a waiver of the formalities of the statute on his part, the creditor was " duly notified," and the justices would be justified in so deciding. The justices, to whom the determination of this question was committed by the statute, have decided it; and have certified that the said Foster had caused the said Brown " to be notified according to law " of the desire of said Foster for the relief provided for by the statute. See the certificate of the justices in the second plea.

The determination of the justices on this point is conclusive, and cannot be reviewed in a collateral proceeding. It is immaterial upon what testimony they came to this conclusion. The matter was solely within their jurisdiction, and can only be reviewed in a direct proceeding authorized by law for that purpose. *Angell* v. *Robbins*, 4 R. I. (1 Ames) 493, 504; *Agry* v. *Betts*, 12 Me. (3 Fair.) 415; *Carey* v. *Osgood*, 18 Me. (6 Shep.) 152; *Baker* v. *Holmes*, 27 Me. (14 Shep.) 153; *Lowe* v. *Dore*, 32 Me. (Red.) 27; *Waterhouse* v. *Cousins*, 40 Me. (Heath.) 333; *Haskell* v. *Haven*, 3 Pick. 404, 406; *Woods* v. *Boldgett*, 15 N. H. 571; *Carter* v. *Miller*, 12 Verm. 513.

3. The second replication to the second and fourth pleas of the defendant alleges, that the citation was not served upon the plaintiff in manner and form, &c. This replication is equally bad, for each and all of the reasons above given.

*James Tillinghast*, for the plaintiff.

1. All the pleas are bad for concluding to the country, when they should have concluded with a verification. In each, new matter is alleged, any material fact of which the plaintiff had the right and ought, by the defendants concluding with a verification, to have been furnished the opportunity to traverse or answer over to; for each of these pleas admits the breach set forth in the declaration, but justifies under the discharge of the justices, and they are not simple traverses of the declaration. The plaintiff is for this defect, therefore, entitled to judgment on this demurrer.

2. At any rate, the conclusions of these pleas being erroneous, the plaintiff was justified in passing them by and tendering at once material issues which the defendants were bound to accept, and it is not for them to demur because the plaintiff has thus treated their pleas as correct and waived their informality in this particular. To have done otherwise would only uselessly have delayed the cause, to have come to the same result, finally. For had the plaintiff specially demurred as he might, the court would not have entered judgment in chief on such demurrer, but merely have ordered an amendment by adding the verification; *Ellis, Adm.* v. *Appleby*, 4 R. I. 469; and then the plaintiff would have replied over as now.

3. But beyond this, these pleas themselves are defective. They all justify — confess and seek to avoid — under the proceedings of a tribunal of limited jurisdiction. Everything therefore essential to show its jurisdiction should be averred. *Frary* v. *Dakin,* 7 Johns. 75, and cases cited. Nothing will be presumed in favor of such jurisdiction. *Bowker* v. *Porter,* 39 Maine, 505, per Appleby, J.; *State* v. *Hartwell,* 35 Ib. 129, and cases cited below.

4. To examine these pleas in order. 1st. The 2d plea states no facts tending to show the jurisdiction of the justices — does not even contain the *averment* that they *had jurisdiction.* It evidently relies upon the *conclusiveness* of the *justices' certificate.* But it is by far the better opinion that the certificate is not conclusive of any facts necessary to confer jurisdiction, except, perhaps, (as in *Angell* v. *Robbins et al.* 4 R. I. 493,) of such facts as by statute are to be determined by the *judgment* of the *justice* upon *proof* of matters, *not of record,* to be submitted to him. Such in fact appears to be the rule of this court. Compare *Cushing & Walling* v. *Briggs et al.* 2 R. I. 139; *Eastwood* v. *Schreder,* 5 Ib. 388. This, too, is the well-settled rule in Massachusetts; *Slasson* v. *Brown,* 20 Pick. 436; *Ward* v. *Clapp,* 4 Met. 455; *Young* v. *Capen,* 7 Ib. 287; *Baker* v. *Moffat,* 7 Cush. 259; *Webster* v. *French,* 11 Ib. 304; *Hobbs* v. *Fogg,* 6 Gray, 251; *Park* v. *Johnson,* 7 Cush. 265; and in New Hampshire; *Osgood* v. *Hutchins,* 6 N. H. 374; *Banks* v. *Johnson,* 12 Ib. 445; *Woods* v. *Blodgett,* 15 Ib. 569; and this, too, though the statute makes it equally obligatory for the justices to examine — be satisfied with — the sufficiency of the notice, as does our own. Compare Mass. Rev. Stat. of 1836, ch. 98, §§ 8–10, p. 597; Ib. Gen. Stat. of 1860, ch. 124, §§ 21, 22, p. 636, 637; N. Hamp. Rev. Stat. of 1853, ch. 213, § 3, p. 548. More than this, it is *nowhere* held that the certificate is *conclusive* (even if *prima facie*) proof of jurisdiction, so far as depending on any facts not recited in it. See *Knight* v. *Norton,* 3 Shep. (15 Maine) 337; *Williams* v. *Burrill,* 10 Shep. (23 Maine) 144. Now this 2d plea and the certificate embodied in it shows that the justices had no jurisdiction, and that the discharge was void. *Knight* v. *Norton,* 3 Shep. 337; *Webster* v. *French,* 11

Brown *v.* Foster & others.

Cush. 304; *Simpson* v. *Bowker*, 11 Ib. 306. 2d. The third plea is defective. The waiver of the service of the citation is not sufficiently averred. As it stands in this plea, it is an averment merely of a conclusion of law, or at most, of mixed law and fact, and as such is bad. 1 Chitty's Plead. 539, 540, (Springfield ed. 1844); *Frary* v. *Dakin*, 7 Johns. 75; unless, indeed, this plea can be construed as setting up the fact of *payment of board* by the plaintiff, as the *only* waiver relied upon; in which case it is bad as such, payment, particularly as alleged here. It not being averred to have been demanded by or paid to any officer authorized to demand or receive it, or even that any officer, then or ever, had the citation, it is no waiver. The payment, if the creditor wishes to save his rights for a hearing and examination, is compulsory *immediately on service*. Rev. Stats. ch. 198, §§ 4–8; and the creditor cannot know, and is not bound to take the risk of deciding on the moment, whether the preliminary proceedings have been regular, — whether the citation is in proper form, or is then in the hands of a proper officer for service, or is in fact properly served, &c. &c. To thus construe the statute and give this effect to this forced payment would make it a mere trap to catch the creditor. See per *Bigelow*, J., in *Baker* v. *Moffat*, 7 Cush. 262; *Webster* v. *French*, 11 Ib. 304; *Simpson* v. *Bowker*, 11 Ib. 306; *Knight* v. *Norton*, 3 Shep. 337; *Young* v. *Capen*, 7 Met. 287; *Hanson* v. *Dyer*, 5 Shep. 96; *Park* v. *Johnson*, 7 Cush. 265; see also the other above cases, where the discharge has been held invalid for defects in matters preceding the return of the citation. 3d. The 4th plea is defective for not sufficiently alleging any service of the citation: as alleged, it merely avers a conclusion of law, or mixed law and fact. It does not even show it in the hands of any officer for service. Chit. Plead. *supra; Frary* v. *Dakin*, 7 Johns. 75; and other cases cited above.

BRAYTON, J. The first point made by the defendant in the argument of this demurrer is, that all the facts set forth in the plea are alleged by way of inducement only, and as the inducement is followed by a special traverse of the breach alleged in the declaration, the plaintiff is not at liberty to traverse any portion of the inducement, and must join in the issue tendered

by the special traverse. The declaration setting out the condi-
tion of the bond, that the debtor should remain a true prisoner in
the custody, &c., until he should be lawfully discharged, without
committing any manner of escape or escapes during the term
of his restraint, alleges for breach, that during the time of his
restraint he did escape and go off and beyond the limits of
said prison, without being lawfully discharged from such his
commitment. The rule referred to by the defendant, and of
which he claims the benefit, requires, that the matter of the in-
ducement should not only be in substance a sufficient answer
to the last pleading, but should not contain a direct denial, nor
be in the nature of a confession and avoidance ; the special
traverse being necessary or proper only because the induce-
ment, while it furnishes a substantial answer to the prior plead-
ing, contains no direct denial. Stephen on Pl. 179. The defend-
ants' plea alleges, that before the pretended escape, two justices
of the peace had administered to the prisoner the poor debtor's
oath, and that, thereupon, they gave him a certificate that he
was discharged from imprisonment, and that, thereafterwards,
he went beyond the prison limits, which is the same escape and
going off and beyond the limits, complained of in the de-
claration. By this plea, the departure on a day certain from the
prison limits, and out of the custody of the jailer and officers,
is admitted, and is sought to be justified by the debtor's hav-
ing been admitted to take the poor debtor's oath ; and in alleg-
ing that this is the same escape alleged in the declaration, the
plea, in effect, traverses that he escaped at any other time. The
plea denies any escape except that which is justified ; and that
is admitted and avoided by the matter set up in the plea. There
seems then to be no necessity for any further traverse, special
or otherwise; certainly not, in order to obviate any objection
that the plea otherwise would be argumentative. Com. D.
Pl. G. 3; 1 Saund. 22, n. 2, 209, n. 8 ; Gould on Pl. ch. 7, § 34.
In *Inglebath* v. *Jones,* Cro. Eliz. 99, the action was for words
spoken in London. Plea, words at Essex ; and an accord and
satisfaction for all actions, &c., everywhere, except London. Rep-
lication, words at London, *absque hoc* that there was any such
accord. Demurrer, and objection to the replication, that it trav-

ersed the inducement to the defendant's traverse. The traverse was held good; and it was said that the plaintiff hath the election to maintain his declaration that the words were spoken there and join issue, or he may by general words maintain his declaration and traverse that which is falsely alleged to take from him his action, and he is received to which plea he chooses. In *Paramour* v. *Varrold*, Cro. Eliz. 418, the case was, false imprisonment in London. Plea, that the defendant was sheriff in Kent, and the recovery of judgment in Sandwich court, in Kent, and that by virtue of a *capias* awarded thereon he imprisoned the plaintiff at Sandwich; *absque hoc* that he was guilty at London. Replication, imprisonment in London; *absque hoc* that there was any such record; demurrer to the replication; and it was held, that the plaintiff might traverse the recovery of judgment, and for the reason before given, — that the alleged authority may be *false*, and if he must join on the issue tendered and could not deny the authority, he would, by the falsity of the defendant's justification, be deprived of a right which the law gives him. So it is said of a trespass, if defendant pleads a justification on a particular day, with a traverse that he is guilty on any other day, the plaintiff may pass by the defendant's traverse, and traverse the matter of justification; and because the day mentioned in the justification may be the day of the trespass complained of and yet the justification may be false, if the plaintiff could not deny the justification, he must be defeated in his action though his rights were complete. Hob. 104; Com. D. Pl. G. 18; 1 Saund. 21, 22, 23; Gould on Pl. 7, § 48.

In the case before us, the plaintiff, unless he can by the allegations contained in his replication avoid the discharge set up in the plea, must, or might, as in the case just stated, fail in his action, though the discharge was in fact utterly void and furnished no justification whatever to the defendant. This plea is not only traversable in this particular, but is faulty in its conclusion. Every pleading containing new matter which goes in avoidance of what is before pleaded must be followed by a verification, and must not conclude to the country. It is necessary that the pleading be kept open, in order to allow the other party to answer by new matter of his own, or other-

wise to traverse ; and had the plea in this case not been by way of confession and avoidance, or had it not contained in the inducement any direct denial, and the special traverse thereon had been proper and necessary, the rule requiring the new matter set up in the plea to be left open would be the same. A conclusion to the country in a special traverse, says Stephen, page 181, is a novelty. The conclusion has always been with a verification till the rule of court, 4 W. IV. Another point made under this demurrer is, that the certificate, given by the justices in the form prescribed by the statute and as set forth in the plea, is conclusive evidence that the citation issued to the creditor and was served upon him in one of the modes prescribed in the statute, and that the plaintiff is estopped to aver that no citation was issued, or that it was not served upon the plaintiff, or that the plaintiff in fact was not notified of the time and place appointed to examine the debtor. The certificate given by the justices states, as is required by the act, that the debtor " had caused the creditor at whose suit he was committed, to be duly notified according to law," &c., and this is claimed as conclusive evidence that citation issued and was served upon the creditor. Whether the certificate is evidence of anything stated in it to have been adjudged and determined, depends upon the question whether the justices had jurisdiction to adjudge and determine. To this end, it is necessary that they should have jurisdiction not only of the subject-matter, but also of the persons of the parties to be affected. This question of jurisdiction is one which is always open whenever a judicial determination is offered as a ground of action or of defence, and the preliminary inquiry in every such case is, was the tribunal clothed with power to judge and determine ?

The statute in this case provides, that upon the complaint of the debtor that he has no property, &c., and his request to be admitted to take the oath prescribed, the justice shall issue a citation to the creditor, — that it shall be served by an officer either by reading it to the creditor, or by leaving an attested copy thereof at his usual place of abode seven days at least before the time appointed for the hearing. The issue of such citation and the service of it upon the creditor are necessary to

give the justices jurisdiction of the creditor; and the justices
have no right to proceed and decide upon his rights, until he
has been thus notified to appear and be heard.

The statement in the certificate of the justices, that the
debtor had caused the committing creditor to be duly notified,
though required by the act to be made in the certificate, has
not been held to be conclusive evidence that the statute notice
had been given.   It has been held, at most, as *prima facie* evi-
dence of that fact, open to be rebutted by proof that no such
notice was in fact given.   *Knight* ·v. *Norton,* 15 Maine, 337;
*Wood* v. *Blodgett,* 18 Ib. 569; *Williams* v. *Burrill,* 23 Ib. 144;
*Banks* v. *Johnson,* 12 N. H. 445.

The defendant claims that upon other language of the stat-
ute, jurisdiction is given to the justices to determine the ques-
tion of notice.   The act provides, that at the time and place
appointed, any two justices may " examine the return of said
citation, and if it shall appear to have been duly served,
may administer the oath," &c.; and it is claimed that by this
language the magistrates are made the sole judges as to
whether the citation issued or was served upon the creditor, and
that the certificate embodies their judgment that a citation was
issued and served.   Some of the cases cited from Maine ap-
parently support this view.   Had the justices who granted the
certificate in this case examined any return of a citation issued
to the creditor, and had thereupon determined that it appeared
to have been duly served, the case would have been supported
by the case of *Agry* v. *Betts,* 12 Maine, 415; *Carey* v. *Osgood,*
18 Ib. 152, and *Waterhouse* v. *Cousins,* 40 Ib. 333.   In all these
cases it appeared from the record of the justices that they ex-
amined the return of the notification, and that it appeared to
them to be duly served.   It may be said with some plausibility
at least, that the justices had adjudged the return sufficient,
assuming that there was a citation and return thereon, —
that they exercised their judgment upon a state of facts con-
templated by the act.   That state of facts was, in the contem-
plation of the statute, that a citation had been issued by the
justice to whom complaint had been made and had been served
by an officer in some mode, and that he made return of his

doings thereon. This state of facts at least was necessary to be shown before it could appear that the justices were entitled to form any opinion, or to do any act whatever towards an examination of the debtor. The power of the two justices commenced from that, and not before. Their jurisdiction in fact depends upon the service of a citation upon the creditor, and before the adjudication of the justices can be allowed to have any effect, it must appear, that the creditor had the notice required. There is nothing in the act which renders it necessary to depart in any degree from the great principle which lies at the foundation of all legal proceedings, that no man shall be bound by any judgment or determination of which he has had no notice which would give him an opportunity to be heard. By a series of cases the courts of Massachusetts have held that such notice is necessary to the validity of any proceeding by the justices to administer the oath to any person applying therefor, and that their certificate stating that due notice had been given, — though it is *prima facie* evidence of such notice, — is not conclusive upon that point, but that the court may look behind the certificate into any irregularity of the justices in their proceedings, and if the citation be not directed to the proper party, as in *Slasson* v. *Brown*, 20 Pick. 436, or if only one of several partners, creditors, was notified, as in *Putnam* v. *Longley*, 11 Pick. 489, the proceedings were void. In *Park* v. *Johnson*, 7 Cush. 265, the certificate was held void because the return of the officer did not show that the citation had been served sufficiently early. These decisions are made under a statute which requires a statement in the certificate that due notice has been given, and also requires, by language as strong at least as that contained in our act, that the justices be satisfied, before granting the certificate, of all the facts required to be certified. They proceed, however, upon the ground, that the question of jurisdiction is always open, and that every jurisdictional fact may be put in issue and must be established by proof before the judgment itself can be allowed any effect; and this undoubtedly is the rule of law. The replication in this case is not objectionable therefore that it alleges that no notification was issued to the creditor, that being a fact which must be estab-

lished in order to make the discharge valid, nor is it objectionable that it alleges that it was not served upon the plaintiff, that being also a fact to be established.    The replication therefore must be sustained and the demurrer overruled.

But the plaintiff claims that the pleas of the defendant, replied to by the replications to which the demurrer is filed, are bad and insufficient, and asks for the same judgment thereon as if he had himself demurred thereto.

The conclusion of these pleas to the country, instead of concluding with a verification, being matter of form rather than of substance, will not, under the ruling in *Appleby* v. *Ellis*, 4 R. I. 462, warrant a judgment against the defendants ; but the court will order the conclusion to be amended.

A further objection made by the plaintiff is, that the pleas do not show jurisdiction in the justices, and that when a party seeks to justify under the proceedings of a tribunal of limited jurisdiction, everything essential to their jurisdiction should be averred.   The objection is made mainly to the defendant's second plea, which it is objected is defective because it does not state that a citation issued to the creditor, or was served upon him, or that the debtor complained to the justice " that he had no property," &c. wherewith to support himself in jail. The case relied upon by the plaintiff is *Frary* v. *Dakin*, 7 Johns. 75.

The rule announced in that case is, that in pleading the judgment of an inferior court, it is sufficient to state such parts only as show jurisdiction in the court, and you may then conclude with a *taliter processum est*, setting forth the judgment. There are many examples of pleading a discharge of the nature here set up.   If they are to be taken as illustrations of the rule of pleading, it is only necessary to aver such facts as show the *subject-matter* to be within the jurisdiction of the court.   *Doe* v. *Parmenter*, 2 Lev. 81 ; *Marks* v. *Upton*, 7 T. R. 301 ; *Ladbroke* v. *James*, Willes, 199 ; *Rowland* v. *Veale*, Cowp. 18 ; *Cotterel* v. *Hook*, Dougl. 97 ; *Turner* v. *Beale*, 2 Salk. 521 ; *Paris* v. *Salkeld*, 2 Wils. 139 ; *Service* v. *Heermance*, 1 Johns. 91 ; *Preble* v. *Kettle*, 2 Ib. 363 ; 7 Ib. 78 ; 1 Ld. Raym. 80 ; 2 Mod. 195. It is said by the court in 2 Lev. 81, " it is well enough to set

forth a plaint levied;" and in Cowp. 18, Ld. Mansfield said, the plaint is set out in Levinz, 176, in the same general way, and so in Lilly's Register, 195, and so in Lutwyck, 914, and holds it sufficient, without averring process, to proceed directly to set out the judgment. And in *Ladbroke* v. *James*, Willes, 199, it is said, that if it had appeared that the sessions had jurisdiction, it would have been sufficient to have said generally that the sessions discharged him, and they would not inquire into any fact necessary to obtain the discharge, of which the sessions were the only judges. In *Adams* v. *Freeman*, 3 Wilson, 5, it appeared that a plaint was levied, and the objection upon demurrer was, that it did not appear that any summons issued; but the court said, *taliter processum est* was sufficient, and they would presume everything regular below. Indeed, there is no case in which it is held that it is necessary to aver a summons or notice to the other party. In *Turner* v. *Beale*, 2 Salk. 521, the objection taken upon demurrer to the plea was, that although it showed that the subject-matter was within the jurisdiction of the justices, yet that it did not appear that the party petitioned them; and the plea was overruled for that cause. It was said in that case by Holt, that the sessions cannot intermeddle but upon application. The plaint in this case was wanting to give the court jurisdiction. "The plaint," (in the language of Ld. Mansfield in *Rowland* v. *Veale*, Cowp. 18,) "is in the nature of an original writ. *A. E. queritur* v. *C. D. de placito transgressionis.*" It is the complaint upon which relief is prayed. In the case cited by the plaintiff, 7 Johns. 75, the plea was overruled because it did not appear that the application made to the judge was made by the insolvent in the mode prescribed by statute for making such applications, viz.: that three fourths in value of his creditors should unite in the application or plaint, and the court held that without it the judge had no jurisdiction. He had no general jurisdiction over insolvents, but only a limited one. This case follows the rule announced in 1 Johns. 91, *Service* v. *Heermance*, that it was sufficient to set forth the plaint, and thereupon to say *taliter, &c.* In that case it was alleged that the debtor's petition was joined in by three fourths in value of the creditors, and the court held

that allegation to be sufficient to give jurisdiction, and to show that the plaint was made in conformity to the statute.

The second plea of the defendant does not aver that any complaint was made to the justice that the debtor here had no property, &c. wherewith to support himself in prison, and asking to be admitted to take the oath, and for this defect the second plea must be overruled.

There is no such defect in either the third or fourth pleas. They both show the plaint made which the statute requires, and those pleas must be sustained.